# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8409 | **DATE** | 4/29/2003 |
| **CASE TITLE** | Miraki vs. Chicago State University | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum opinion and Order granting in part and denying in part defendant's motion to dismiss. The motion is granted as to plaintiff's section 1981 claim ( count II) and Title VII retaliation claim ( count III), and denied as to plaintiff's Title VII discrimination claim ( count I). Defendant's motion to dismiss plaintiff's claims for punitive damages is also granted. Discovery is ordered closed on 8/29/03. Any dispositive motion will be due by 9/30/03. If no motion is filed, pretrial order will be due by that time; and response to any motions in limine by 10/14/03. Pretrial conference set for 10/28/03 at 4:00 p.m. Trial set for 11/3/03 at 9:30 a.m.
(11) ☑ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | ? number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 3 0 2003 date docketed | 10 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/29/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 3 0 2003

MOHAMMED MIRAKI,              )
                              )
            Plaintiff,        )
                              )
    v.                        )   No.  02 C 8409
                              )
CHICAGO STATE UNIVERSITY,     )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Mohammed Miraki filed a three count complaint against defendant Chicago State University ("CSU"), alleging national origin and religious discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq., and Section 1981, 42 U.S.C. § 1981, and retaliatory discharge in violation of Title VII. CSU now moves to dismiss the complaint. I grant the motion in part and deny the motion in part.

On a motion to dismiss, I take all allegations in the complaint as true. *Wilczynski v. Lumbermans Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996). The facts as alleged by Mr. Miraki are as follows. Mr. Miraki is a United States citizen of Afghan descent, and a follower of Islam. Mr. Miraki was employed as a non-tenured lecturer at CSU, beginning in the fall of 1998. In the spring of 2000, he applied for a tenured faculty position. In August 2000, he was denied a tenured position and was not recalled to teach for the fall 2000 semester. Mr. Miraki was given a half

10

workload for the spring 2001 semester, but has not been offered any further employment since. He alleges that during his employment with CSU, the chair of his department made discriminatory comments about him, and that CSU's employment decisions were discriminatory. In August 2001, Mr. Miraki filed charges with the EEOC and the Illinois Department of Human Rights. In September 2002, he received a right to sue letter from the EEOC. In November 2002, Mr. Miraki filed suit in this court. CSU now makes several arguments for dismissal.

I. Eleventh Amendment

CSU argues that plaintiff's section 1981 claim is barred by the Eleventh Amendment.[1] The Eleventh Amendment states that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. amend. XI.[2]

Mr. Miraki argues that, though a state university, CSU is not entitled to the protection of the umbrella of immunity enjoyed by

---

[1] CSU does not argue that Mr. Miraki's Title VII claims are barred by the Eleventh Amendment. *See generally Nanda v. Bd. of Trs.*, 303 F.3d 817, 831 (7th Cir. 2002) (Eleventh Amendment does not bar Title VII disparate treatment claims against states).

[2] Although the text of the Eleventh Amendment refers only to suits against states brought "by Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI, the Amendment provides immunity for states from suits brought against it by its own citizens. *Nanda*, 303 F.3d at 822 n.3 (citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002) and *Edelman v. Jordan*, 415 U.S. 651 (1974)).

2

the State of Illinois. "[T]he Eleventh Amendment protects the state and its agencies; it does not shield political subdivisions." *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987). The question in a case such as this is whether CSU "is more like a county or city than it is like an arm of the State." *Id.* Numerous Seventh Circuit cases have found state universities to be entitled to Eleventh Amendment protection. *See, e.g., id.* (Purdue University); *Osteen v. Henley*, 13 F.3d 221, 223-24 (7th Cir. 1993) (Northern Illinois University); *Davidson v. Bd. of Governors*, 920 F.2d 441, 442 (7th Cir. 1990) (Western Illinois University); *Cannon v. Univ. of Health Sciences*, 710 F.2d 351, 356 (7th Cir. 1983) (University of Illinois and Southern Illinois University). Although courts reexamine the issue with regard to the facts of each case, "it would be an unusual state university that would not receive immunity." *Kashani*, 813 F.2d at 845. Mr. Miraki bears the burden of persuading me that CSU is somehow different from these other universities, even at this early stage in the litigation. *See Osteen*, 13 F.2d at 223-24 (affirming dismissal on Eleventh Amendment grounds of suit against Northern Illinois University because plaintiff failed to distinguish circuit precedent that other state universities received immunity). Mr. Miraki's citations to cases in other circuits finding various state universities not entitled to Eleventh Amendment immunity does not

3

satisfy this burden.[3] CSU is entitled to the same degree of state sovereign immunity as the State of Illinois.

There are two well-established exceptions to the rule of state sovereign immunity: (1) a state may waive the protections of the Eleventh Amendment and thereby consent to suit in federal court, or (2) Congress may use its enforcement powers under the Fourteenth Amendment to abrogate the states' Eleventh Amendment immunity. *Kroll v. Bd. of Trs.*, 934 F.2d 904, 907 (7th Cir. 1991). Mr. Miraki argues that Congress abrogated Eleventh Amendment immunity to states receiving federal financial assistance when it enacted 42 U.S.C. § 2000d-7, which provides that

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

Technically, Mr. Miraki's section 2000d-7 argument should be phrased in terms of state waiver of sovereignty, rather than Congressional abrogation of sovereignty. Section 2000d-7 was

---

[3] Further, two of the three cases cited by Mr. Miraki are distinguishable. One involved a state university that was originally private, *Kovats v. Rutgers,* 822 F.2d 1303, 1312 (3d Cir. 1983), and one involved a junior college in Texas, where junior colleges are created following a local community's petitioning of its county school board. *Hander v. San Jacinto Junior Coll.,* 519 F.2d 273, 279 (5th Cir. 1975). The third case cited by Mr. Miraki is a district court case finding that the University of Delaware is not entitled to Eleventh Amendment immunity. *Gordenstein v. Univ. of Del.,* 381 F. Supp. 718, 721 (D. Del. 1974).

enacted in response to the Supreme Court's decision in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234 (1985), which held that "mere receipt of federal funds" does not establish waiver of sovereign immunity, and that if Congress wishes to condition receipt of federal funds on waiver of immunity, it must make that intent "clear." *Id.* at 246-47. Section 2000d-7 establishes "an unambiguous waiver of the States' Eleventh Amendment immunity." *Lane v. Pena,* 518 U.S. 187, 200 (1996). Thus, section 2000d-7 is not a Congressional abrogation of state sovereign immunity in cases to which section 2000d-7 applies; it instead establishes that states who receive federal funds have waived their sovereign immunity in those cases.[4]

Regardless, Mr. Miraki argues that the catch-all provision of section 2000d-7 allows suit against a state that receives federal money and discriminates in violation of section 1981. This

---

[4] This distinction may seem overly technical, but I think it is an important one to recognize given the Supreme Court's recent string of Eleventh Amendment cases. *See Nanda,* 303 F.3d at 823-27 (reviewing *City of Boerne v. Flores,* 521 U.S. 507 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank,* 527 U.S. 627 (1999); *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62 (2000); and *Bd. of Trs. v. Garrett,* 531 U.S. 356 (2001)). Those cases express a narrow view of what sorts of Congressional legislation may be enacted pursuant to the enforcement authority of the Fourteenth Amendment. Although there appears to be no case directly addressing whether section 2000d-7 was enacted pursuant to the enforcement provision of the Fourteenth Amendment, it is unlikely that such a basis for its enactment would be upheld. As a result, that section could not abrogate state sovereign immunity. That section is, however, a valid exercise of Congressional spending power, which allows spending to be conditioned on state waiver of immunity.

argument misreads section 2000d-7. The catch-all provision of section 2000d-7 does not apply to immunity against suits for violation of *all* federal statutes prohibiting discrimination (such as section 1981). It applies to immunity against suits for violation of only those federal statutes that specifically prohibit discrimination *by recipients of federal financial assistance*. While the statutes enumerated in section 2000d-7 all refer to discrimination specifically by recipients of federal financial assistance, 29 U.S.C. § 794; 20 U.S.C. § 1681; 42 U.S.C. § 6101; 42 U.S.C. § 2000d, section 1981 does not. Section 1981 does not fall within the catch-all provision of section 2000d-7, and thus, regardless of whether CSU receives federal financial assistance, section 2000d-7 does not establish that it has waived its Eleventh Amendment immunity to suits under section 1981. *Cf. Kaimowitz v. Bd. of Trs.*, 951 F.2d 765, 768 (7th Cir. 1992) (42 U.S.C. § 1983 does not fall within catch-all provision of section 2000d-7 because it does not specifically prohibit discrimination by recipients of federal financial assistance). As Mr. Miraki fails to present any other basis for Illinois' waiver or Congressional abrogation of sovereign immunity against his section 1981 claim, it is dismissed as barred by the Eleventh Amendment.

II. Punitive Damages

CSU argues that Mr. Miraki may not sue it for punitive damages under Title VII. 42 U.S.C. § 1981a(a)(1) provides that "[i]n an

action brought ... under [Title VII] ... and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b)." Subsection (b) provides that in various circumstances "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*)." 42 U.S.C. § 1981(b)(1) (emphasis added). CSU argues that the parenthetical exception for governmental bodies in section 1981(b)(1) means that Mr. Miraki may not recover punitive damages from it. *See, e.g., Baker v. Runyon*, 114 F.3d 668 (7th Cir. 1997) (reversing award of Title VII punitive damages against United States Post Office). Mr. Miraki argues that CSU is not a government "agency," and therefore does not fall anywhere within the exception. In support of his contention, Mr. Miraki cites a district court case from Nevada, *Cleveland v. Runyon*, 972 F. Supp. 1326 (D. Nev. 1997). In that case, the court noted that "the plain language of [section 1981a(b)] exempts 'agencies,' not 'entities.'" *Id.* at 1328. Even if this distinction is relevant and non-agency entities are not exempt from punitive damages, CSU is a government agency. 30 ILCS 5/1-7 (defining "State agencies" as including universities). Mr. Miraki's claim for punitive damages is dismissed.

## III. 300 Day Limitations Period

CSU next argues that Mr. Miraki is barred from recovering for any alleged acts of discrimination or retaliation that occurred more than 300 days prior to his filing of charges with the EEOC. *See, generally, E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 970 (7th Cir. 1996) (because Illinois is a "deferral state," the limitations period of 42 U.S.C. § 2000e-5(e) requires filing an EEOC charge within 300 days of the alleged discrimination). Mr. Miraki alleges that he filed charges with the EEOC on August 22, 2001. (Compl. ¶ 14.) According to CSU's calculations, 300 days prior to August 22, 2001 is October 27, 2000. Mr. Miraki alleges that after the spring 2001 semester, he was taken off the reemployment roster because of his national origin and religion. (Compl. ¶ 13.) Mr. Miraki has thus alleged discriminatory conduct falling within the 300 day limitations period and his Title VII claims cannot be dismissed on that ground. If CSU is seeking dismissal on the ground that Mr. Miraki's claims are barred by the statutory limitations period, it is denied. If CSU is simply requesting a declaration that Mr. Miraki may not recover for conduct occurring prior to October 27, 2000, that request is also denied. So long as Mr. Miraki has alleged at least one act of discrimination within the limitations period, which he has, issues of which conduct specifically may serve as the basis for recovery are best delayed until the summary judgment or trial stage.

IV. Failure to State a Claim

CSU next argues that Mr. Miraki's Title VII claims should be dismissed for failure to state a claim upon which relief can be granted. CSU argues that Mr. Miraki has alleged neither direct evidence of discrimination/retaliation nor the elements of a *prima facie* case of discrimination/retaliation under the *McDonnell Douglas* burden-shifting approach. Federal courts require only notice pleading, however. *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir. 1999). Notice pleading requires only that plaintiff set out in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Scott,* 195 F.3d at 951. The complaint need only contain enough to allow the defendant to understand the gravamen of the complaint, and it need not spell out every element of a legal theory to provide notice. *Scott,* 195 F.3d at 951-52. Here, even assuming that Mr. Miraki cannot recover for any conduct prior to October 27, 2000, he alleges that following the spring 2001 semester, he was taken off the reemployment roster because of his national origin and religion, and has not been offered employment since. (Compl. ¶ 13.) This is sufficient to state a claim for employment discrimination under the generous federal notice pleading standards.

Mr. Miraki does fail, however, to state a claim for retaliation. Mr. Miraki alleges that "[i]n complaining of CSU's

9

discriminatory practices to the EEOC ... [he] engaged in conduct protected by Title VII, after which he received retaliation as a direct and proximate result." (Compl. ¶ 23.) Mr. Miraki's only allegation of a complaint to the EEOC, however, is his allegation that he filed EEOC charges on August 22, 2001. (Compl. ¶ 14.) All of the adverse employment actions that he alleges occurred prior to that date. (Compl. ¶¶ 12-13.) Thus, he fails to adequately allege that CSU acted in retaliation to his EEOC complaint. Mr. Miraki asserts in his brief that he had filed an earlier EEOC complaint in September 2000. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 12.) This assertion is not found in his complaint, however, and my consideration of a motion to dismiss is limited to the pleadings. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). As Mr. Miraki's complaint fails to state a claim for retaliation, that claim is dismissed.

V. Conclusion

Defendant's motion to dismiss is GRANTED as to plaintiff's section 1981 claim (count II) and Title VII retaliation claim (count III), and DENIED as to plaintiff's Title VII discrimination

claim (count I). Defendant's motion to dismiss plaintiff's claims for punitive damages is also GRANTED.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 29, 2003